## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 09-20453-JAD |
| | : | |
| ZAMBRANO CORPORATION, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| | X | |
| | : | |
| ROSEMARY C. CRAWFORD, | : | Adversary No. 11-02123-JAD |
| TRUSTEE OF THE ESTATE OF | : | |
| ZAMBRANO CORPORATION, | : | Doc. # 41 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HILLCREST DVELOPMENT | : | |
| ASSOCIATES, LP, | : | |
| | : | |
| Defendant. | : | |
| | X | |

### MEMORANDUM OPINION

The matter before the Court is a *Motion to Approve Settlement* (the "Motion") filed by plaintiff Rosemary C. Crawford, Trustee of the Estate of the Zambrano Corporation (the "Trustee"). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334(b).

Through the Motion, the Trustee seeks approval of a settlement of judgments obtained against Eugene Zambrano, III ("Mr. Zambrano") and Hillcrest Development Associates, LP ("Hillcrest") (together, the "Defendants"). For the reasons set forth more fully below, the Court denies the Motion.

# I.

The debtor, Zambrano Corporation (the "Debtor"), commenced the instant case by filing a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on January 29, 2009 (the "Petition Date").  The case was converted to Chapter 7 on June 26, 2009.

Following a joint trial, two judgments (together, the "Judgments") were entered on September 17, 2012, against the Defendants: a judgment against Mr. Zambrano at Adversary No. 09-02045-JAD in the amount of $4,551,269, and a judgment against Hillcrest at Adversary No. 11-02123-JAD in the amount of $150,000.  (Doc. # 55, p. 3).  The Judgments were transferred to the judgment records of the Federal District Court for the Western District of Pennsylvania at 12-mc-363 and 12-mc-365, and the Court of Common Pleas of Allegheny County at GD-12-20045 and GD-12-20043.  (Id. at p. 3).

On March 12, 2013, the Trustee obtained charging orders (the "Charging Orders") against the Defendants' partnership and limited liability company interests at 12-mc-363 and 12-mc-365, under which all partnership and limited liability companies in which the Defendants had an interest were ordered to pay to the Trustee any and all distributions or return of contributions or repayment of any loans or other obligations to which the Defendants were entitled.  (Id. at p. 4).  The Trustee avers she has received no distributions or other payments since the entry of the Charging Orders.  (Id.)

The assets of Hillcrest consist of partnership interests in non-debtor entities, and its sole source of income is distributions from such interests.  (Id.

{00011449.DOCX}

at p. 5; see also Doc. # 56, Exhibits 1, 4).  Mr. Zambrano is the managing partner for each of the partnerships and is in control of the timing of the distributions.  (Doc. # 55, p. 5).  Three of the partnerships, Leetsdale Housing Associates, Zambrano-JED, LP, and Zambrano Rockpointe Associates, own real estate.  (Id.)  The Leetsdale Housing Associates' real estate is subject to mortgages with a balance of about $2.3 million, and, according to the Trustee, has an estimated value of $2.4 million.  (See Doc. # 56, Exhibit 1, ¶ 12(d); Doc. # 55, p. 6.)  Mr. Zambrano has a 45% interest in this property, and Hillcrest has a 35% interest.  (Doc. # 55, p. 6).  Zambrano-JED, LP owns an undivided 25% interest in real property located at 4835 Campbells Run Road, Robinson Township, PA, which has been valued at $1.2 million.  (Id. at pp. 5-6).  The Zambrano Rockpointe Associates real estate consists of a vacant parcel of ground located on Deer Creek Road, Gibsonia, PA; the Trustee represents that Mr. Zambrano and Hillcrest each have a 50% interest in this property, which is estimated to be worth $86,000.  (Id. at pp. 5-6).

In addition to Mr. Zambrano's partnership interest in Hillcrest, he jointly owns twelve real estate properties with his wife, Kimberly Zambrano.  (Doc. # 55, p. 7; Doc. # 56, Exhibit 1).  These properties were transferred from Mr. Zambrano's sole ownership to joint ownership with his wife on or about July 19, 2010, after the Petition Date.  (Doc. # 56, Exhibit 1, pp. 6-7).  At the time of transfer, all but two of the properties were subject to PNC Bank's blanket lien of about $3.9 million; one of those two properties not covered by the blanket lien is subject to another PNC Bank mortgage of about $55,750.  (Doc. # 55,

pp. 7-8). One of the twelve properties was sold in April 2012, and the remaining eleven properties have been cumulatively valued between $4,091,100 and $6,751,600. (Id. at pp. 8-9).

At the time of these real estate transfers (the "Transfers"), the properties were also subject to judgment liens of the Laborers Combined Funds at CA 10-139 and the Carpenters Combined Funds at CA 10-138, in the total amount of $236,864.58. (Id. at p. 8). Subsequently, these judgments were settled for $30,000 and a confessed judgment by Tri-State Capital Bank at GD-10-010651 in the amount of $5,489,034.24. (Id.) The Tri-State Capital Bank judgment has since been stricken by the Court of Common Pleas, and such action has been appealed to the Pennsylvania Superior Court. (Id.) The $30,000 settlement has been paid in full. (Doc. # 56, Exhibit 1, p. 2).

After unsuccessfully attempting bank garnishments against the Defendants, and after Mr. Zambrano, Kimberly Zambrano, and their daughter Donna Zambrano represented through affidavits that the Defendants' assets (other than possible partnership and limited liability company distributions) are illiquid, fully encumbered, or exempt, the Trustee entered into settlement negotiations with the Defendants. (Doc. # 55, p. 3; Doc. # 141, Exhibit A, p. 3). The Trustee filed her Motion to Approve Settlement on July 5, 2013 and attached the settlement (the "Settlement") at Exhibit A. (See Doc. # 141, Exhibit A). Under the terms of the Settlement, the Defendants are to pay the sum of $130,000 to the Trustee, to be paid by an up-front lump sum of

$30,000 and equal monthly payments of the balance through December 2014, in full satisfaction of the Judgments. (Id. at p. 3).

Miller Electric Construction, Inc. (the "Respondent") filed an objection to the Motion (the "Objection") on July 31, 2013, averring that the Settlement should be denied because it is substantially less than the Judgments, there is a strong likelihood that the Transfers will be determined to be fraudulent transfers, significant equity exists in the transferred properties over and above the liens thereon, and the Defendants' partnership interests include real estate assets of significant value. (See Doc. # 44).

A hearing on matter was held on November 5, 2013. The matter is now ripe for decision.

## II.

Pursuant to Bankruptcy Rule 9019(a), the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. See, e.g., In re Trism, Inc., 282 B.R. 662, 666 (8th Cir. BAP 2002). Under Rule 9019(a), the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir.1996). To be informed, the bankruptcy court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." In re Martin, 91 F.3d at 393.

Generally, settlements are favored in bankruptcy proceedings "because they provide for an often needed and efficient resolution of a bankruptcy case."

Matter of Penn Cent. Transp. Co., 596 F.2d 1102, 1103 (3d Cir. 1979). However, "[e]ven if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced." In re Devon Capital Mgmt., Inc., 261 B.R. at 623. While some deference is given to the business judgment exercised by the trustee in reaching a compromise or settlement, the proponent of a settlement bears the burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities. In re Key3Media Grp., Inc., 336 B.R. 87, 92-93 (Bankr. D. Del. 2005).

The Third Circuit has held that the process of bankruptcy court settlement approval "requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" to determine whether the settlement is in the best interest of the estate. In re Martin, 91 F.3d at 393. The Martin court enumerated four factors for courts to consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors. Id.

Analyzing the settlement under the Martin factors as set forth below, the Court finds that the Trustee has not met her burden of proving that the Settlement falls within the reasonable range of litigation possibilities.

{00011449.DOCX}

## A.

The first factor to consider is the probability of success in outstanding litigation. In addressing this factor, the Court is not to "decide the numerous questions of law and fact raised . . . but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 803 (E.D. Pa. 1986) (citing In re Carla Leather, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984)).

The Trustee admits to the existence of various litigation actions which could secure a higher payout for creditors, including the following: (a) avoidance litigation regarding twelve properties transferred to Mr. Zambrano and his wife, Kimberly Zambrano; (b) avoidance litigation regarding income and partnership distributions to Kimberly Zambrano's individual account and a joint account she holds with Mr. Zambrano; and (c) collection efforts regarding compelling partnership distributions and a certificate of deposit jointly titled to Mr. Zambrano and his daughter, Angeline Geisler. (Doc. # 41, pp. 5-7). However, the Trustee argues that "the outcome or value of such litigation is subject to a number of factors," (Motion, p. 5) and, while admitting that "there will be amounts collected, very likely in excess of the amount of the Settlement," the Trustee avers that "there is no guarantee that will be the result" (Id. at p. 7).

The Respondent asserts that the prospective litigation has a high likelihood of success and would result in a more significant creditor payout

{00011449.DOCX}

than the proposed Settlement. Specifically regarding outstanding avoidance litigation surrounding the Transfers, the Respondent notes that the transferred properties "are conservatively valued at $6.7 million, more than enough to satisfy the liens thereon and provide a significant payout to Zambrano's creditors." (Doc. # 59, p. 3). Further, the Respondent argues that the transferred properties were held solely in Mr. Zambrano's name for a significant period of time prior to being transferred, and that Mr. Zambrano claims that the transfers were for estate purposes but has provided no evidence or documentation of such. (Id. at p. 3; Doc. # 57, Exhibits A, B). While the Respondent admits that there are always hurdles to litigation, and notes that a decision to strike an additional lien held by Tri-State Capital Bank is currently on appeal, the Respondent believes the probability of success for any litigation is very high. (Doc. # 59, p. 3).

The Court believes there is merit to the Respondent's argument regarding the likelihood of success for any litigation, particularly the fraudulent conveyance litigation. Beyond asserting that the litigation will be costly and the collection difficult, which more directly speaks to the second and third Martin factors, the Trustee does not make a persuasive case that the outstanding litigation would not be successful. To the extent that the record contains facts of the sort necessary for appraising the merits of the outstanding litigation, the Court finds such facts point to the probable existence of valid and valuable causes of action. Thus, the Trustee has not met her burden of

persuasion in convincing the Court finds that this factor supports denying the Motion.

**B.**

The second factor to consider in the <u>Martin</u> analysis is the likely difficulties in collection. In support of her contention that collection would be difficult, the Trustee argues that there are several "hurdles" to converting the Defendants' real estate interests into cash, noting the liens on the property limiting the available equity, the need for a voluntary sale of the underlying real estate and the distribution of proceeds, and the need to avoid a fraudulent transfer of real estate and then pursue liquidation. (Doc. # 58, pp. 3-4). Further, the Trustee suggests "scenarios . . . under which the equity substantially disappears, perhaps because the real estate does not generate the indicated values, because of liquidation nature of the sales or because of the market, or perhaps because of the inability to obtain a stay against PNC foreclosing on its mortgage." (<u>Id</u>. at p. 4). Finally, the Trustee asserts that the Defendants' cash flow will cease upon the liquidation of the real property. (<u>Id</u>. at p. 5).

The Trustee has not presented any persuasive evidence that the "hurdles" the Trustee alludes to here regarding the need to sell the real estate, distribute the proceeds, and pursue the avoidance actions pose any more difficult than the usual hurdles to collection litigation. Likewise, the scenarios for disappearing equity could arguably exist in any case. As to the Trustee's argument that liens are limiting the available equity, the Respondent notes

{00011449.DOCX}

that, but for the PNC Bank blanket mortgage, which appears to the Court to be less than the real estate's potential value, "none of the liens identified by the Trustee as limiting the value of [the equity] are currently valid liens." (Doc. # 44, p. 2). The Respondent avers that the Tri-State Capital Bank Judgment lien "has since been removed," and the Respondent "believes that the appeal thereof will be unsuccessful making the equity in those properties available for execution by the Trustee." (Id. at p. 2). Further, the Laborer's Combined Funds judgment and the Carpenters Combined Funds judgment have been satisfied; Mr. Zambrano admits in his affidavit that the there is no balance due on these judgments. (Doc. # 56, Exhibit 1, p. 2; see also Doc. # 44, p. 2).

Regarding the Trustee's argument that partnership distributions would cease once the real property was liquidated, the Trustee has not persuaded the Court that the value of any foregone distributions would outweigh the equity made available to creditors by such a liquidation, and has even submitted to the Court that she is unaware of the value of certain distributions provided to Mr. Zambrano in 2009, 2010, 2011, and 2012, and to Hillcrest in 2012. (Doc. # 55, p. 10). Additionally, the Respondent argues that the fact that no distributions have been made from the various partnerships since the charging orders were obtained suggests that the money "must be going somewhere" and could therefore be available for creditors. (Doc. # 59, p. 3). In support of this contention, the Respondent also avers that since the charging orders were obtained, Mr. Zambrano's wife has been paid over $27,000 over a three month

period, and PNC Bank continues to accept interest-only payments on its blanket lien on the transferred properties. (Id.)

For these reasons, the Court finds that the Trustee has not met her burden of persuasion that collections would be so difficult to warrant such a discounted settlement.

### C.

The third Martin factor to consider is the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it. The Trustee admits that the Settlement "represents a very substantial discount from the judgment amounts," but asserts that it "is sought on the basis that ordinary collection will require what is anticipated to be a substantial additional litigation and time, which may not yield, after costs and the delay, a materially better result." (Doc. # 41, p. 2). To support her argument that litigation would be "substantial", the Trustee argues that "the collection litigation will be labor intensive, probably require the defense of appeals (to the extent the Trustee is successful), will be complex, will be expensive (there will likely need to be [twelve] separate appraisals along with the appraisal testimony for purposes of the avoidance action, with additional sums to be incurred for each judicial sale of avoided real estate if the Trustee prevails on the avoidance litigation), and will take extensive time to resolve." (Id. at p. 9). Therefore, argues the Trustee, the likely benefits of pursuing litigation "does not *materially* outweigh the risks, time delay and costs of such litigation." (Id.)

However, "[l]itigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968). The Trustee has not averred any specific estimation of the complexity, expense, or likely duration of such litigation. In light of this fact, coupled with the Court's belief in the likely success of the outstanding litigation, the Court finds that this factor does not support approval of the Trustee's Motion.

**D.**

The final factor in the Martin analysis is the paramount interest of the creditors. Considering the lack of evidence presented to this Court to support the Trustee's contentions regarding the above factors, the Court agrees with the Respondent's argument that "there is a strong likelihood that further discovery will disclose assets that can be attached to satisfy the judgments and provide a recovery significantly more than the proposed settlement amount," and that "it is more beneficial to the creditors to further inquire into what assets [Mr. Zambrano] has left and why they cannot be reached by creditors." (Doc # 44, p. 3). The Respondent has successfully persuaded this Court that "[t]here is no reason to rush to settlement here." (Doc. # 59, p. 4). The Court also agrees that Mr. Zambrano "has an interest in several millions of dollars' worth of partnership interests, partnership distributions, and property interests," yet, "despite that, the proposed settlement asks this Court to

{00011449.DOCX}
-12-

approve the payment of what amounts to a pittance." (Id. at p. 4). Thus, the Trustee has not persuaded the Court that the settlement is in the best interest of the creditors or within the range of reasonableness.

### III.

In summary, given the above reasons, the Trustee has not met her burden in persuading the Court that the Settlement is within the "range of reasonableness" or in the best interest of the creditors. The Court therefore denies the Motion. An appropriate order will be entered.

Date: <u>February 13, 2014</u>           <u>/s/ Jeffery A. Deller</u>
                                          **JEFFERY A. DELLER**
                                          United States Chief Bankruptcy Judge